UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
Z.H., individually and on behalf of Z.H., a child
with a disability,

                              Plaintiff,                          14-cv-5192 (PKC)

            -against-                          MEMORANDUM
                                                    AND ORDER

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                              Defendant.
-----------------------------------------------------------x
CASTEL, U.S.D.J.

        Plaintiff Z.H. (the "Parent") brings this action on behalf of her daughter Z.H. (the "Student") against the New York City Department of Education (the "Department") under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA").

        The Parent contends the Student, who has been diagnosed with autism, is being denied access to a Free and Appropriate Public Education ("FAPE"). The State Review Officer ("SRO"), in reversing the findings of an Impartial Hearing Officer ("IHO"), concluded that the Department could not lawfully be ordered to place the student in a yet-to-be-identified, non-approved, private school. The SRO concluded that, although a parent may place a student who has been denied a FAPE in a non-approved school and then seek tuition reimbursement, New York law does not allow for an order directing a school district to place a child in a school that has not been approved by the Commissioner of Education.

        Both sides have moved for summary judgment pursuant to Rule 56, Fed. R. Civ. P. (Docket # 10, 15.) The Court affords significant deference to the decision of the SRO, which reflected a close understanding of the state's educational policies and federal authorities

governing IDEA.  The Court agrees that, although a school district may be required to reimburse tuition for a non-approved school as a remedy for the failure to provide a FAPE, it may not be compelled to contract with a non-approved school in order to provide a FAPE.  As explained, there is a principled distinction between the steps that a school district must take to provide a FAPE and the remedy afforded to a parent in the event that a school district denies a student a FAPE.  The Department's motion for summary judgment is therefore granted, and the Parent's motion is denied.

BACKGROUND

The relevant facts in this action are undisputed.  The Parent resides in Kings County, New York.  (Pl. 56.1 ¶ 1; Def. 56.1 Resp. ¶ 1.)  The Student is a child with a disability as defined by IDEA, 20 U.S.C. § 1401(3)(A).  (Pl. 56.1 ¶ 2; Def. 56.1 Resp. ¶ 2.)  The Parent meets the statutory definition of a parent under IDEA, 20 U.S.C. § 1401(23).  (Pl. 56.1 ¶ 3; Def. 56.1 Resp. ¶ 3.)

The Student was born in 2001, and the Department classifies her as a student with autism.  (Pl. 56.1 ¶ 4; Def. 56.1 Resp. ¶ 4; Sterne Dec. ¶ 13.)  Prior to that designation, she was classified as emotionally disturbed.  (Sterne Dec. ¶ 70.)  The Student also has a disorder called Ehlers-Danlos Syndrome, which causes hyper-mobility in her joints and makes them vulnerable to dislocation.  (Sterne Dec. ¶ 20-21.)

The Student has had numerous behavioral problems in the classroom.  She has fled from schools, and on one occasion, had an altercation on a school bus that resulted in a police officer handcuffing her arm, resulting in injury.  (Sterne Dec. ¶¶ 35, 39.)  Because the Student has Ehlers-Danlos Syndrome, she cannot be restrained without risking her health.  (Sterne Dec. ¶¶ 39, 44, 47.)  She has a history of volatile conduct at school, including "severe

tantrums and refusals to cooperate," "aggressive, destructive behaviors, explosive meltdowns, elopement, and school refusals." (Sterne Dec. ¶¶ 25, 48.) She once leaped out of a first-floor window, has jumped from a school bus, and has destroyed a bulletin board and books. (Sterne Dec. ¶ 64.) During one flight from school, she was found walking on a frozen pond. (Sterne Dec. ¶ 71.) The Student has been suspended multiple times. (Sterne Dec. ¶ 25.)

In January 2013, the Parent concluded that the Student's behavior was not improving and that she was not being challenged academically, so the Parent withdrew the Student from the Orchard School in Yonkers, which she had been attending from third through sixth grades. (Sterne Dec. ¶¶ 22-23.) In April 2013, the Department provided the Student with in-home instruction services, but the Student exhibited negative behaviors, which her home instructor struggled to manage. (Sterne Dec. ¶¶ 27-28.)

At the beginning of the 2013-14 school year, the Student did not have a school placement. (Sterne Dec. ¶ 29.) She began attending the Walt Whitman School ("Whitman") in November 2013, but fled the premises on her third day of attendance, and did not return until January. (Sterne Dec. ¶¶ 30-38.) The day after her return, the Student had the school bus altercation that resulted in her handcuffing. (Sterne Dec. ¶ 39.) At around the same time, Whitman called the Parent and told her that the Student had been accepted for placement in a private school, Woodward, but the Parent rejected the placement. (Sterne Dec. ¶¶ 40-43.)

In a letter dated August 7, 2013, and an amended letter dated September 19, 2013, the Parent requested an impartial due process hearing, as provided for by IDEA and New York law. (Pl. 56.1 ¶ 5; Def. 56.1 Resp. ¶ 5; Sterne Dec. ¶ 8.) The Parent claimed that the District had denied the student a FAPE. (Sterne Dec. ¶ 10.) She claimed that the Student had been improperly classified; that the Department did not perform necessary evaluations in the 2011-12

and 2012-13 school years; that the Student's educational placement was inappropriate; and that the District denied the Parent meaningful participation in the development of an Individualized Education Program ("IEP").[1] (See Admin. Record, Parents' Ex. Q.) The Parent sought a variety of relief, including annulment of the Student's IEP and an order directing the Committee on Special Education to build a new program for Student. (Sterne Dec. ¶ 10.)

Michael Lazan, Esq. presided as IHO over a due process hearing initiated at the Parent's request. (Pl. 56.1 ¶ 6; Def. 56.1 Resp. ¶ 6; Sterne Dec. ¶ 9.) On December 4, 2013 and January 29 and 30, 2014, the IHO heard testimony from eight witnesses, including school principals and administrators, psychologists and the Parent. (Pl. 56.1 ¶¶ 7-8; Def. 56.1 Resp. ¶ 7-8; Sterne Dec. ¶ 11.) The IHO issued a written decision on April 24, 2014 (the "IHO Decision"), and corrected decisions on April 30 and May 12, 2014. (Pl. 56. ¶ 9; Def. 56.1 Resp. ¶ 9.)

Lying at the heart of the present action is the IHO's order that the Student should be referred to the Central Based Support Team ("CBST"), "which will consider all options for the Student's placement, including 'non-approved' non-public schools."[2] (IHO Dec. at 9.) The IHO Decision observed that existing placements had been inappropriate for the Student, and that the Student "is ultimately very difficult to instruct and very difficult to place." (IHO Dec. at 8.) It stated that courts have "wide discretion" to ensure that students receive a FAPE, and "agree[d] with the parent that any school search should include non-public schools that are not state-approved . . . ." (IHO Dec. at 7.)

---

[1] An IEP is devised by a Committee on Special Education ("CSE"), which is to include parents, teachers, a school psychologist and a district representative. N.Y. Educ. L. § 4402.
[2] The CBST is a New York City agency that identifies non-public school placements for students with disabilities. See http://schools.nyc.gov/Academics/SpecialEducation/programs/environment/state-supported-schools.htm (last visited May 28, 2015).

The Department appealed the IHO Decision to the SRO, arguing that the IHO did not have the authority to order the Department to consider placing the Student in a non-approved, non-public school.  (Pl. 56.1 ¶ 10; Def. 56.1 Resp. ¶ 10.)  On June 30, 2014, the SRO, Justyn P. Bates, issued a 10-page written decision, reported as Appeal No. 14-077 (the "SRO Decision"), which reversed the portion of the IHO Decision concerning the Student's placement, concluding that the IHO did not have authority to direct the Department to identify a non-approved, non-public school as a potential placement.  (SRO Dec. at 6-10.)  The SRO Decision noted that under New York law, school districts were authorized to contract only with non-public schools that had been approved by the Commissioner of Education.  (SRO Dec. at 7, citing N.Y. Educ. L. § 4402(b)(1), (2); Antkowiak v. Ambach, 838 F.2d 635, 640-41 (2d Cir. 1988).)  The SRO Decision also observed that although a parent may unilaterally place a student in a non-approved, non-public school, and then seek reimbursement or direct funding from the District, there is no legal basis to direct the District to prospectively identify a non-approved placement.  (SRO Dec. at 8-9.)

Only July 11, 2014, the Parent commenced this action on behalf of the Student. (Docket # 1.)  The Complaint seeks to vacate the SRO Opinion and to reinstate the relief ordered by the IHO.  (Compl't ¶ 25.)

RULE 56 STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  It is the movant's initial burden to come forward with evidence on each material element of its claim or defense, sufficient to demonstrate its entitlement to relief as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d

241, 244 (2d Cir. 2004). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

THE IDEA ADMINISTRATIVE PROCESS AND STANDARD OF REVIEW

In New York, if a parent wishes to challenge some aspect of the IEP, she may file a due process complaint, which is heard before an IHO, with the IHO's decision appealable to the SRO. See 20 U.S.C. § 1415(b)(6)(A), (f)(1)(A), (g)(1); N.Y. Educ. L. § 4404(1)(a), (2). "[A]ny party aggrieved by the findings and decision" of the SRO may file a civil action in federal district court. 20 U.S.C. § 1415(i)(2)(A).

"[A] motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact. Rather, the motion serves as a 'pragmatic procedural mechanism' for reviewing a state's compliance with the procedures set forth in IDEA and determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits." Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005). A district court "must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 191 (2d Cir. 2005).

"'The role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed,' however, and 'courts must bear in mind the statutory context and administrative judges' greater institutional competence in matters of educational policy.'" Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist., 773 F.3d 372, 386 (2d Cir. 2014)

(quoting R.E. v. N.Y. City Dep't of Educ., 694 F.3d 167, 189 (2d Cir. 2012)).  Federal courts must give "due weight" to state proceedings, "'mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'"  Id. (quoting M.H. v. N.Y. City Dep't of Educ., 685 F.3d 217, 240 (2d Cir. 2012)); accord R.E., 694 F.3d at 189 ("courts must bear in mind the statutory context and the administrative judges' greater institutional competence in matters of educational policy," and "must defer to the SRO's decision on matters requiring educational expertise").

"[T]he deference owed to an SRO's decision depends on the quality of that opinion."  Id.  In determining the weight to afford an SRO decision, a district court also considers the decision-maker's familiarity with the evidence, including witnesses.  Hardison, 773 F.3d at 386.  When the IHO and SRO reach conflicting conclusions, the courts, "[a]s a general matter," defer to the SRO as the final state decision-making authority.  Hardison, 773 F.3d at 386.

DISCUSSION

> I.  Under IDEA and New York Law, the Department Cannot Be Ordered to Consider Placing the Student in an Unapproved Private School.

IDEA conditions its funding to the states on state oversight and approval of school placements, and the guarantee that students placed by the states receive a FAPE.  The Parent contends, however, that the SRO incorrectly applied IDEA when the SRO concluded that the Department could not be ordered to consider placement in a not-yet-identified, unapproved school.  Citing to a line of authority governing reimbursement to parents who unilaterally place their children in an unapproved school, the Parent contends that the IHO appropriately directed the Department to consider placing the Student in an unapproved, private school.

IDEA provides federal funding to state programs for the education of children with disabilities, conditioned on the states implementing laws that guarantee educational

standards.  20 U.S.C. § 1412(a).  Students with a disability must receive a FAPE "that emphasizes special education and related services . . . ." 20 U.S.C. § 1400(d)(1)(A).  The FAPE must "meet the standards of the State educational agency," and conform to the IEP required by 20 U.S.C. § 1414(d).  20 U.S.C. § 1401(9)(B), (D).

"The Act contemplates that such education will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as nonhandicapped children, but the Act also provides for placement in private schools at public expense where this is not possible." Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 369 (1985).  For students placed in private schools by a public agency, the state "shall determine whether such schools and facilities meet standards" that apply to public schools, and ensure that the students "have all the rights the children would have" if enrolled in public school.  20 U.S.C. § 1412(a)(10)(B)(ii); see also 34 C.F.R. § 300.2(c)(1) ("Each public agency in the State is responsible for ensuring that the rights and protections" established by IDEA are given to children "[r]eferred to or placed in private schools and facilities by that public agency.").

New York has a comprehensive regime for approving private schools for student placement by a school district.  New York defines an "approved private school" as "a private school which conforms with the requirements of Federal and State laws and regulations governing the education of students with disabilities, and which has been approved by the commissioner for the purpose of contracting with public schools for the instruction of students with disabilities." 8 N.Y.C.R.R. § 200.1(d).  To receive approval for student placement by a school district, New York requires the private school to conform to standards on parent expenses, the confidentiality of student records, school conduct and discipline, length of the school day,

number of school days, personnel qualifications, fire and safety measures, and student interventions. 8 N.Y.C.R.R. § 2007(b)(1-8).

The Second Circuit has concluded that when a district places a student in a private school, the school must satisfy state approval requirements, and has rejected relief directing placement in an unapproved school. In Antkowiak v. Ambach, 838 F.2d 635, 638 (2d Cir. 1988), the New York State Education Department administratively annulled the decision of a hearing officer who concluded that a student should be placed in a non-approved, non-public school.[3] The Education Department had previously concluded that the non-approved school failed to satisfy state standards. Id. at 640-41. The parent filed an action in federal court, seeking injunctive relief to require state approval of the placement. Id. at 637.

Following a bench trial, the district court concluded that the student should be placed in the non-approved, non-public school, and that, as required by federal law, the non-approved school provided the same rights and benefits that the student would receive in a public school. Id. at 638. The Second Circuit reversed, and concluded that "the district court had no authority" to direct placement in a non-approved private school. Id. at 640. Under the federal statute and New York law, private schools that are selected for placement must satisfy defined criteria for providing a FAPE and guarantee that students "have the same rights as those handicapped students placed in facilities of the state." Id. The Second Circuit concluded that by requiring the school district to place the student in a non-approved school, the district court acted contrary to federal law requiring such a placement to satisfy state education standards. Id. at 640-41.

---

[3] Antkowiak was brought under the Education of the Handicapped Act ("EHA"), which was the short title of IDEA prior to the statute's amendment in 1991. See Pub. L. 102-119, § 1 (Oct. 7, 1991). No party argues that any substantive amendment to the EHA/IDEA affects the holding of Antkowiak.

The Parent argues that Antkowiak is no longer controlling precedent. She cites to a line of authority concerning a district's obligation to reimburse a parent who unilaterally places a child in an unapproved private school. The Parent particularly relies on Florence County School District Four v. Carter ex rel. Carter, 510 U.S. 7, 13-14 (1993), which concluded that under IDEA, a parent may independently place a student in private school, even when the public school district objects to the placement. In Carter, the Supreme Court addressed only "the narrow question" of whether a parent could receive reimbursement for private-school expenses when the parent's chosen school did not satisfy IDEA's definition of a FAPE. 510 U.S. at 13. Carter expressly distinguished a parent's unilateral placement of a child in a non-approved private school from a school district's direct placement in such a school. Id. at 14 (school district's standards for approving a private-school placement "do not apply to private parental placements"). "In such cases, where the private placement has necessarily been made over the school district's objection, the private school education will not be under 'public supervision and direction.'" Id. at 13. Reimbursement was nevertheless appropriate when the parent herself elected to place a student in a non-approved private school. Id. at 14-15; accord Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 111 (2d Cir. 2007) (parents "may, at their own financial risk, enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state."); cf. Connors v. Mills, 34 F. Supp. 2d 795 (N.D.N.Y. 1998) (ordering district to pay tuition directly to private school unilaterally chosen by parent, when the parent and district agreed that the district could not provide a FAPE).[4]

---

[4] The other decisions cited by the Parent similarly involve a district's reimbursement obligations when a parent unilaterally places a child in an unapproved school, as opposed to a district's direct placement of a student. See Streck v. Bd. of Educ. of the E. Greenbush Cent. Sch. Dist., 408 Fed. Appx. 411 (2d Cir. 2010) (summary order) (directing reimbursement for parents' unilateral placement); Mr. & Mrs. A. v. N.Y.C. Dep't of Educ., 769 F. Supp. 2d 403 (S.D.N.Y. 2011) (ordering retroactive tuition payment for student that parents unilaterally placed in non-

Carter does not stand for the proposition that a school district can be mandated to identify and place a student in a non-approved, private school. Carter acknowledges the reimbursement remedy in the event that the student is denied a FAPE and the parent unilaterally chooses a placement for a student. Antkowiak and the related statutes and regulations govern school district's options as part of the efforts to provide placement. The fact that a school district may consider placement in a private school does not mean that it may place the student at any private school, including one that does not meet the Commissioner's approval standards.

The SRO properly concluded that Carter does not overrule Antkowiak.

II.     The SRO Decision Is Entitled to Significant Deference.

Additionally, based on the SRO Decision's thorough analysis and familiarity with educational policy, the Court concludes that it should be afforded substantial deference.

The SRO Decision summarized the facts and procedural history of the dispute, including the Student's history of school placements, medical conditions and educational challenges. (SRO Dec. at 2-4.) It reviewed the due process complaint notice and the relief sought therein. (SRO Dec. at 4-5.)

In summarizing the IHO Decision, it noted the IHO's conclusion that the Department had not provided a FAPE for the 2012-13 and 2013-14 school years, and that the Student should be placed at a secure facility that prevented elopement, provided instruction using ABA techniques, and offered social skills training. (SRO Dec. at 5.) Indeed, the Department did not appeal the conclusions or relief set forth in the IHO Decision except as it related to the

---

approved school); Straube v. Florida Union Free Sch. Dist., 801 F. Supp. 1164 (S.D.N.Y. 1992) (ordering district to consider placement of school identified by parent); Sabatini v. Coring-Painted Post Area Sch. Dist., 78 F. Supp. 2d 138 (W.D.N.Y. 1999) (ordering direct payment to parent who unilaterally placed student in non-approved school); Draper v. Atlanta Indep. Sch. Sys., 518 F.3d 1275, 1287 (11th Cir. 2008) (district court appropriately directed unilateral private placement by parent, subject to reimbursement).

Student's placement in a non-approved school. That relief included training and counseling for the Parent; adapted physical education for the Student; 10 hours of home-based instruction per week; 230 hours of academic tutoring for the Student; and counseling and occupation therapy sessions for the student. (IHO Dec. at 8-10; SRO Dec. at 5.)

As has been discussed in detail, the primary basis for the Department's appeal to the SRO was its contention that an order directing the Department to consider placing the Student in a non-approved school was contrary to law and beyond the authority granted to either an IHO or SRO. (SRO Dec. at 5.) The SRO Decision concluded that "under the circumstances presented in this matter, the specific relief awarded by the IHO – directing the CBST to consider non-approved nonpublic school placements – was improper." (SRO Dec. at 7.)

Notably, the SRO Decision explained that circumstances specific to the Student weighed against the conclusions of the IHO Decision. The SRO Decision expressed "sympath[y] with the parent's frustration," but observed that "the district has not yet exhausted the process of locating a State-approved nonpublic school to address the student's needs." (SRO Dec. at 9.) It noted that the IHO did not make findings concerning the Department's proposed placement at Woodward, and that the hearing record "indicates that there are other State-approved nonpublic schools the district contacted regarding the student but for which the intake process was not even completed." (SRO Dec. at 9.) If a district cannot identify an appropriate placement, it must notify the state's Commissioner of Education, at which point only the Commissioner may direct the student into an interim placement. (SRO Dec. at 9, citing N.Y. Educ. L. § 4402(2)(b)(3).) The SRO Decision observed that there may be "certain limited circumstances" in which a school district could place a student in an unapproved school, specifically if the parent and the school district agreed that the district cannot otherwise provide a

student with a FAPE, but that those circumstances did not exist here.  (SRO Dec. at 9-10.)  "Thus while the IHO's order directing the district to consider placing the student in an unapproved school was not an appropriate delegation of the IHO's authority to award appropriate relief, in the event that the district does not identify an appropriate placement for the student the parent is not left without options."  (SRO Dec. at 10.)

The SRO Decision reflects a detailed knowledge of the Student's claims, educational experiences and health and behavioral history.  The SRO Decision demonstrates an appropriate consideration of New York special-education law and IDEA, and the educational policies implicated by the Student's circumstances.  This Court therefore affords significant deference to the conclusions set forth in the SRO Decision.

### III. Counts Three and Four Are Voluntarily Dismissed.

Count Three and Count Four of the Complaint seek an Order directing the District to comply with those portions of the IHO Opinion that are not related to the Student's placement in a non-approved, non-public school.  However, the Parent's memorandum of law states that since the action was filed, "defendant has largely complied with the provisions of the IHO's decision relating to the third and fourth causes of action.  As such, plaintiff is no longer requesting enforcement of the IHO's decision as limited by the SRO's decision as set forth in those causes of action."  (Pl. Mem. at 1.)

Counts Three and Four are therefore voluntarily dismissed without prejudice.

### IV. The Parent Is Directed to Submit a Pre-Motion Letter as to Her Attorneys' Fees Claim.

Count Two of the Complaint demands an award of reasonable attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3).  (Compl't ¶¶ 26-29.)  Section 1415(i)(3)(B)(i)(I) gives a

district court discretion to award reasonable attorneys' fees "to a prevailing party who is the parent of a child with a disability."

The Parent alleges that because she was prevailed before the IHO, she is entitled to some portion of her attorneys' fees and costs. (Compl't ¶¶ 27-29.) As noted, the Department did not appeal the relief ordered by the IHO, except to the extent that it directed placement consideration in a non-approved private school. In the Parent's memorandum of law, she "requests permission to defer her request for attorneys' fees until after the Court has decided the merits of this appeal. Because the question of the amount of fees awarded depends in part on the extent of relief obtained, the parties can argue the question of fee entitlement more effectively (and efficiently) once the final relief has been determined." (Pl. Mem. at 1.)

The Parent is directed to set forth the basis of a proposed motion for attorneys' fees in a pre-motion letter filed no later than 14 days from the date hereof. The Department may submit its response 7 days after the filing of the response. The parties are advised to consult this Court's decision in K.F. v. New York City Department of Education, 2011 WL 3586142 (S.D.N.Y. Aug. 10, 2011), for guidance.

CONCLUSION

The defendant's motion for summary judgment is GRANTED and the plaintiff's motion is denied. (Docket # 10, 15.)

The Parent is directed to set forth the basis of a proposed motion for attorneys' fees in a pre-motion letter filed no later than 14 days from the date hereof. The Department may submit its response 7 days thereafter.

SO ORDERED.

                                                    P. Kevin Castel  
                                                  United States District Judge

Dated: New York, New York  
        May 28, 2015